Our first case of the morning is 117934, People of the State of Illinois v. Mark A. Downs. Are you ready to proceed? Well, Apple, are you ready? You may proceed. Good morning. Good morning. May I please support the council? I'm Assistant Attorney General Catherine Dorsch on behalf of the people. The parties here actually agree on much. And we agree in particular that a century's worth of this court's reasonable doubt jurisprudence holds that neither the court nor council should define reasonable doubt for the jury. And the rationale behind this rule is that the term is self-defining and really needs no further definition or is incapable of further definition. The idea is that attempts at definition can be unhelpful, misleading, or confusing. And this appeal can be resolved by a straightforward application of this long-established and also undisputed precedent. In compliance with this court's reasonable doubt jurisprudence, when faced with a jury note questioning about the meaning of reasonable doubt, defendants' counsel agreed that, quote, we can't give them a definition of reasonable doubt. And the trial court responded accordingly. To the jury notes, he said, we cannot give you a definition. It's for you to define. And defendants' jury ultimately returned a verdict, finding the defendant guilty of murder. Now, in a second direct appeal, defendant complained that the trial court's response to the jury note ran afoul of this court's long-standing precedent, that instructing the court shouldn't define reasonable doubt. But the court, it couldn't have run afoul of that. It couldn't have violated that prohibition because it didn't define reasonable doubt. So applying this court's established precedent, the appellate court should affirm the trial court's judgment, and that should have been the end of the matter. Now, the defendant here provides no reasoned basis to depart from this established precedent. In fact, his claim before this court is the polar opposite of the claim he pressed before the appellate court. Now, before this court, he states for the first time that the trial judge was obligated to define reasonable doubt in response to the jury's note. Of course, that claim is Barton's invited error because, as I mentioned earlier, his attorney, defense counsel, said, no, judge, we can't define reasonable doubt for the jury. But invited error aside, defendant's current argument is wholly unimportant. It doesn't explain how the trial court could have done otherwise than it did, given this court's established precedent, that there was no established definition of reasonable doubt from this court, and no patterned instruction on point. Further, there are many definitions of reasonable doubt in use today throughout the state and federal jurisdictions, and defendant doesn't discuss them, much less suggest which one he would have this court adopt. Nor does he say when the jury should be instructed. Whenever there's a jury question, upon counsel's request, both, he doesn't say. He does seem to suggest that the term should be defined whenever the wording of a jury question betrays some misunderstanding of the burden of proof. But how is the judge to determine that? Defendant does not say. Defendant's argument also entirely overlooks the good reasons for adhering to this court's established rule. First, as I discussed, the term is notoriously difficult to define. But second, there's a real downside to defining reasonable doubt, and that's increased litigation. The U.S. Supreme Court has never defined reasonable doubt, but it has, despite the lack of definition, overturned a conviction, finding that the instruction did not meet that unestablished definition of reasonable doubt. We simply don't know what the court believes reasonable doubt to be. So any definition that this court would adopt would definitely be subject to constitutional challenge. Counsel, what is the Victor Court talking about when it says, quote, the proper inquiry is not whether the instruction could have been applied in an unconstitutional manner, but whether there was a reasonable likelihood that the jury did so apply it? It sounds something like, I know it when I see it test. Essentially, yes. That is essentially what the court is applying, I know it when I see it test. But how is this court to come up with a definition of reasonable doubt if we don't know what the Supreme Court said? We don't know how the Supreme Court will rule on any definition. And there are criticisms of every definition that are out there. Counsel, what about the trial court's response within the context of the jury's question? Is it proper or necessary for us to look at that? Trial court's response to the jury note was entirely proper, yes, it was. As I was saying, to get back to what I was saying about the definitions, even if this court were to craft a definition of reasonable doubt, and it survived constitutional scrutiny, invariably lawyers, judges would depart from that term, and that would create even more litigation. As they litigated, well, is this, which was close to the court's definition, does that also sufficiently satisfy and define reasonable doubt? So defining reasonable doubt really presents a risk without any real benefit. Now that said, the appellate court was even farther off on the mark, because like defendant, it believes that the jury's question betrays some misunderstanding of the burden of proof, but the appellate court decision left the judge in a catch-22. He wasn't allowed to define reasonable doubt, but because he didn't, they reversed. And they announced the trial judge's conundrum in a footnote and reversed and remanded for a new trial. But at bottom, both defendant's argument and the appellate court's decision suffered from the same flaw, and that is that they purport to find error from the jury's note or question rather than any improper definition of reasonable doubt. But Sullivan's rule that deficient reasonable doubt is structural error applies to deficient instructions, of course, and not jury questions. And Victor holds that trial courts must avoid defining reasonable doubt so as to lead the jury to convict unless it's shown. What if the question was clear that the jury was confused? What if they said, does that mean more likely than not? Does that mean 51%? What should the judge do? What if it's really clear that the jury is confused or is wrong? What should the judge do? We never know. That leads me to my next point, Your Honor, because we're always speculating on the meaning of the jury's question. We can't know for sure. And so that's why we shouldn't look at it. We don't know if it's one juror. We don't know if it's multiple jurors. We're always going to be speculating. Trial courts and courts of review would have to speculate on the meaning of that jury note every time. And no matter which way it came out, I submit that the defendant would argue that the trial court gets wrong. So the two problems with this rule requiring judges to speculate are sort of what I would call a reviewability problem and also a policy problem. Counsel? I'm right here. In this case, the response, though, the question indicated that they reduced reasonable doubt to a percentage equation. Does the response invite the jury to apply a percentage? No. In this case? The response accurately states the law. Had the judge said nothing at all, had he not responded, or had he simply said we cannot define reasonable doubt, the jury would have done the very same thing. Is it appropriate for the judge to say what he did say, define reasonable doubt in the sense of it's up for you to decide? That's not a definition of reasonable doubt. That's not a definition. It didn't purport to give any meaning to the word reasonable doubt or reasonable doubt combined. It said we can't give you a definition of that, Georgia. So, again, this reviewability problem, the trial courts have to guess at the meaning of the jury notes. The appellate court has to guess at the jury note. We can't know based on a jury's mere question whether it's contemplating a lesser burden or what burden it ultimately applied. I mean, they may have gotten together and come up with something else entirely that's not reflected in the jury note. My second point is the policy question. We don't want courts speculating about the jury's decision-making process. Our legal system is based on the notion of a jury as sort of a black box. We carefully regulate the input, the evidence that's regulated by rules of evidence and the argument. But we don't inquire into the jury's decision-making process. And the appellate court's decision here, as well as the defendant's proposed rule, really requires courts to speculate on their process and it's incompatible with this policy. So there are good reasons why this court has held for over a century now that court and counsel should not define reasonable doubt for the jury. The trial court adhered to this precedent, and this court should reject defendant's contrary arguments as unpreserved, undeveloped, and simply unpersuasive. We have, of course, you know, we've consistently said we shouldn't define reasonable doubt, but we also have a line of cases that say, if a jury is confused and has a question, the judge should answer the question, shouldn't just say you've got the instructions. Do you have any suggestions? Are you suggesting that we should formulate a response that a judge should give when a jury says what is reasonable doubt, other than it's for you to define or we won't define it or look at your instructions? What the judge did here was fine. I don't know what the judge could have said. As the appellate court noted, I don't know what the judge could have said. It's not impermissible to define reasonable doubt, but you're taking a real risk. This court has never held that there's a per se reversibility, you know, per se rule that if you define it, there's a reversal. Never held that, but. And my question is, do you have any suggestions as to what we should tell the court to do, the trial courts to do? Are you suggesting that we. I would have lots of ideas about this, but I think this court's entired to full adversarial briefing on that point. Like I said, there are many definitions in use today about reasonable doubt, and we're going to. If we want courts to have something to say, we should give them essentially a script. What do we think reasonable doubt means? And we should have full adversarial briefing on that matter. There's a lot of. There's not a lot of consensus on the proper terms, and as I said, even the U.S. Supreme Court hasn't been able to define. May it please the court and counsel. Good morning, your honors. My name is Bruce Kirkham, and I represent the defendant, Appleby, Mr. Mark Downs. The issue in this case is not whether Illinois should adopt a definition of reasonable doubt that would be given in all criminal jury cases. And the issue in this case also is not how should a trial court answer a basic general jury's question requesting a definition of reasonable doubt. The issue in this case is whether the trial court's instruction to the jury, which was given in response to a question which specifically indicated and contained language that the jury had a fundamental misunderstanding of what is reasonable doubt, and that it was off track and it was predisposed to applying a standard less than a reasonable doubt. The question is whether there's a reasonable likelihood that that jury understood that instruction to allow conviction based on proof less than beyond a reasonable doubt. And the answer to that question is yes, it did. The jury's note which said, what is your definition of reasonable doubt, 80 percent, 70 percent, 60 percent, clearly indicated that the jury was confused and prepared to apply a standard less than reasonable doubt. No one has ever suggested in this case at any level that 80 percent, 70 percent, 60 percent constitutes proof beyond a reasonable doubt. By giving the non-answer answer of this. I think counsel wrote those in the judge in a catch-22 in that situation. We certainly acknowledge that it's a tough situation because we don't have a definition of reasonable doubt. Well, more than that, I mean, there's case law that say he shouldn't define it, right? There's case law that says that you have a duty to answer legal questions, but there's also cases that say you don't have to answer them if it could confuse the jury, result in further confusion and so forth. But. So what should he have done? He should have addressed the misconception of the jury head on. Let me. What should he have said? He should have said, well, the second district formulation, I believe, is correct. When the second district said that the trial judge should have said reasonable doubt is not expressed as a percentage. It is the highest percentage that we apply in Illinois courts. That tends to steer the jury back to reconsider and tell them that they're off track. Let me throw out a couple of quick hypotheticals to illustrate my answer. What if the jury's question is, what is your definition of reasonable doubt? Can we flip a coin? And the jury, excuse me, the trial court responds, it is up to you to decide. What if the jury comes right back and says, can we borrow a quarter? At some point, the trial court has to step in and stop a jury that is clearly prepared to convict a criminal defendant on the standard lesson of reasonable doubt. But did not the appellate court says in the footnote that it offers this explanation about percentages, but then said both the state and the defense thought that that would be straying into giving a reasonable doubt instruction that would be error? Yeah. At the time, Terman was the controlling authority, and we were discussing Terman at that time, which found a per se reversible error based on a response, a general response, it's up to you to decide. In discussing that, you know, we discussed and said it at oral argument in that case, in that context, that it could be a reversible error just any answer that you give, and that's one of the complications of our longstanding jurisprudence of not having a definition of reasonable doubt. It does put the courts and the parties in a tough situation when they're forced to deal with these kinds of questions. But, again, you know, we've got to look beyond these general questions of what is the definition of reasonable doubt. We can't consider this case with our thumb over the part of the jury's note that said 80 percent, 70 percent, 60 percent. The court's response to the jury has to be considered in the context of the jury's note. When that jury sent the note, it was showing, it affirmatively demonstrated it was prepared to apply an unconstitutionally low standard, standard that the second district found to be disturbingly low. The trial court can't stand by idly and let the jury simply proceed ahead on that standard. I'd like to address a point that the state raised for the first time in its reply brief, and that's this notion of invited error. I disagree. It's not invited error in this case. The defense counsel's response was in, the defense counsel was responding to the trial court's observation that there is no IPI for reasonable doubt. It was the prosecutor who actually suggested the response that the trial court ultimately give. By no stretch of the imagination did trial court agree or propose an instruction which would allow his client to be convicted on a standard less than beyond a reasonable doubt. This is more akin to a waiver issue, and waiver is a restriction on the parties, not on the reviewing court. Waiver issues are reviewable in plain error analysis, and it's firmly established that defective reasonable doubt instructions constitute structural error and fit within the framework of plain error. You do find that the trial court's instruction that basically gave the jury permission to apply a standard of reasonable doubt as low as a 60% certainty of the evidence, then it is structural error and reversible error, which would require Mr. Downs' conviction to be vacated and he'd be given a new trial. The appellate court found structural error, right? But did they ever indicate what the judge should have done? Only in the footnote that says they should have told the trial judge should have informed the jury that reasonable doubt is not based on a percentage, that it is the highest percentage and that you have received all your other instructions. But going back to my hypotheticals, you know, if a jury asks a question that says can we flip a coin, what's your definition of reasonable doubt? Is it more likely than not? What's your definition of reasonable doubt? 80%, 70%, 60%? I would say that the proper response of the trial court, you know, you have to say no, beyond a reasonable doubt, reasonable doubt is not determined by flipping a coin. No, reasonable doubt is not determined or the definition of reasonable doubt is not more likely than not. No, the definition of reasonable doubt is not a percentage, 80%, 70%, 60%. Where you go from there, I don't know the answer to that. You know, when you don't have this... What is the, obviously there's knowledge that the jury is confused when a question comes, but with a definition that says you're to collectively decide, can it be assumed that some of those same discussions are going on in jury rooms without questions being submitted, namely that one or two of the jurors say, hey, do we flip a coin? And the others say, you can't do that. Well, and we do recognize the black box, you know, the factor, the jury's deliberations are sancrosanct and we don't get involved in what happens in a jury room where the jury has been properly instructed. But when the jury, before it enters the black box or comes out as one of the evidence and indicates that we're seriously off track, we're going to convict this guy on a 60% certainty of the evidence, and the trial court goes, we're not going to step in, whatever you decide. If that's how you want to define it, that's okay. I mean, we've violated Mr. Downs' due process rights by allowing him, standing by idly and covering our eyes while he's, whether there's a question or not, on an unconstitutionally low standard. The appellate court had the opportunity to have a footnote that addressed the specific facts of this case. A decision from this court will go further than the facts of this particular case. So assuming that we agree with you, tell us how we can help trial judges. How would we instruct them generally in situations where they get a question and whether or not they're to define reasonable doubt or attempt to define reasonable doubt? I mean, there would be clear benefits to the judicial system of joining the other states that do have a formal definition of reasonable doubt. That's part of the jury instructions, and they're out there. I mean, Justice Ginsburg proposed one, and Victor versus Nebraska, the state of Massachusetts, recently modified its reasonable doubt definition based on that. If you don't want to do a formal definition, then the next category is these generic basic questions of, you know, can you give us a definition of reasonable doubt without any indication that the jury is off track? I mean, they're obviously confused. They're wrestling with the question, but in those cases it is somewhat speculative to try to figure out where the jury is coming from. You know, there is a non-definition definition that this court has recognized for over 100 years. You know, going back to 1912 people versus Barkas, 1919 people versus Moses, there is no better definition of reasonable doubt than the words themselves. Even if you do something like that, you've at least got the jury focused on, look at the words. Take a step back and think about this rather than this non-answer answer which we're seeing of it's up for you to decide. We're not going to get involved even though you're confused and you've asked us a question, a legal question. And I recognize, too, that you've got to split in the circuits on the question that you're asking. You've got Kerman in the Third District saying it's pretty much per se error to you to decide. You've got the Second District in a post-downs case, Thomas, which they say without some kind of indication beyond just the mere asking of the question, that's a proper response. You've got one court saying reversible error per se, another saying not reversible error. We go back to the Victor test of reasonable likelihood. But the answer to that question is I defer to Your Honor. But that's an important question for the trial judges who are struggling with this. But that's not my case. That's not the case that I'm standing here arguing to you this morning. In this case, we know that the jury was misguided, that it was off track, was prepared to apply a standard of reasonable doubt, which no one, I think, believes is beyond a reasonable doubt. The trial court gave it permission to apply that standard, and they came back with a guilty verdict in a case in which the Second District walked right up to the edge of finding that it would have satisfied its plain error under the closely balanced prong. So whatever happens in the Turman versus Thomas situation, Mr. Downs must have his conviction vacated and be granted a new trial, and the Second District must be affirmed. Thank you, Your Honors. I just had a few brief points to make in response to my opponent's argument. You have to keep in mind, of course, that we don't know why the jury requested a definition of reasonable doubt. As Justice Thomas suggested, maybe one juror, two jurors, three jurors. We just don't know why. Maybe. Maybe they requested a definition because they've been instructed on the meaning of everything else, essentially. They've got elements instructions and burden instructions, and they wonder if it was left out inadvertently. But we don't know. We can't know why the jury asked for a definition. Maybe that's why Sullivan's rule doesn't apply to jury notes. It applies to definitions of reasonable doubt. Justice Thomas was also saying, what did the appellate court say? You know, what should the trial judge, the first footnote in the opinion, where I believe it was Justice Burkett asked an oral argument of the parties in the second district. Well, you know, what should the judge have done? Couldn't he have said, you know, this is the highest burden in law, et cetera? But again, defendants counsel said, no, that would stray into defining reasonable doubt for the jury. He informed the court that that was improper. I may have misunderstood Justice Carmeier's earlier question. If we're short of defining reasonable doubt, I understood your question, Justice Carmeier, to be talking about or seeking a definition of reasonable doubt. But I think on further reflection, what the courts were interested in is what to do in this situation. What should judges say? Even if they're not going to define reasonable doubt for the jury, what should they say? I know this court has sanctioned in the past. The name of the case escapes me. But a situation where the trial judge did say, you know, if you sat on a civil jury, this burden is much higher. It's not like that. And it's the highest burden at law. Something like that, I submit, might be appropriate. But again, you run the risk, as you would with a definition of reasonable doubt, that the lawyers and the judges are going to depart from those magic words creating further litigation. And defense counsel's proposed burden or instruction is really no different than what happened here. And so, therefore, there's no reason to depart from this court's established precedent. So before the defendant here can ask this court to jettison 100 years of precedent, he has to properly preserve the issue for review. And before the court considers such an important issue as defining reasonable doubt, the court is entitled to full adversarial briefing. If there are no further questions, we'd ask that you reverse the judgment of the appellate court. Thank you. Case number 117934, People of the State of Illinois v. Mark A. Downs, will be taken under advisement as agenda number four. Ms. Doersch, Mr. Kirkham, thank you for your arguments today. You're excused at this time.